IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

JOSEPH TERRANCE GRONDIN,

      Plaintiff,

v.                                     Case N0. 6:13-cv-11095

WOOD COUNTY PROSECUTOR'S
OFFICE; WOOD COUNTY
PROBATION DEPARTMENT; WV
SUPREME COURT OF APPEALS; WV
DEPARTMENT OF CORRECTIONS;
GINNY CONLEY; JEFFREY
NUCKOLLS; JASON WHARTON;
STEVEN CANTERBURY; WV
LAWYER DISCIPLINARY BOARD;
ERNEST DOUGLASS; JOSEPH
SANTER; JOHN ELLEM; COURTNEY
AHLBORN; JOSEPH TROISI;
PATRICK RADCLIFF; WILLIAM
SUMMERS; and PAUL MARTENEY,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the court is the screening of Plaintiff's *pro se* complaint filed pursuant to 42 U.S.C. § 1983, (ECF No. 2), as well as multiple Motions to Dismiss, (ECF Nos. 27, 30, 31, 35, 39, 43, 58), and Motions for Summary Judgment, (ECF Nos. 50, 54), filed by various named defendants. This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of

1

proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned **FINDS** that Plaintiff fails to state a claim for which relief may be granted against any of the defendants. Therefore, the undersigned respectfully **RECOMMENDS** that the complaint be **DISMISSED**, **with prejudice**, and this matter be removed from the docket of the court.

## I.   <u>Factual History</u>

On May 12, 2005, Plaintiff Joseph Terrance Grondin ("Grondin") was indicted by a Wood County, West Virginia Grand Jury on four counts of sexual abuse, and was appointed counsel. (ECF No. 27-1 at 3; 50-1 at 11-12). On December 5, 2005, Grondin and the prosecuting attorney reached an agreement that required Grondin to plead guilty to two counts of the indictment in exchange for dismissal of the remaining two counts. That same day, a hearing was conducted by Wood County Circuit Judge George W. Hill, who entered the plea agreement and guilty plea into the record and referred the matter to the Probation Department for preparation of a presentence report. (ECF No. 39-1 at 5-8). In February 2006, Judge Hill resigned from the bench allegedly amid allegations of sexual harassment and criminal behavior. (ECF No. 2-1 at 2, ECF No. 39-1 at 27). On May 12, 2006, Grondin appeared before Circuit Judge James O. Holliday, who accepted Grondin's guilty plea, convicted him of the two counts, and sentenced him to two consecutive terms of one-to-five years of imprisonment. (ECF No. 39-1 at 9-11). On September 1, 2006, Grondin filed a Motion for Reconsideration of his sentence, which was denied. (*Id.* at 2).

Grondin did not appeal his conviction, but did petition the Circuit Court of Wood County for habeas corpus relief on March 12, 2007. (*Id.* at 12-17). The Circuit

Court held three omnibus evidentiary hearings and ultimately denied Grondin's habeas petition on May 5, 2011. (ECF No. 27-1; 39-1 at 12-17). On May 11, 2011, Grondin was released from custody, having discharged his state sentence. (ECF No. 2 at 3).

## II.   <u>Claims in the Instant Action</u>

On May 13, 2013, Grondin filed the instant action, naming seventeen (17) defendants and alleging constitutional violations relating to his state criminal and habeas proceedings, as well as his conditions of confinement. (ECF No. 2). In general, Grondin claims that "[t]he actions of the defendants, and each of them, constitute maliciouse *[sic]* prosecution, fraud, falsifying court documents, false imprisonment, [and] the violation of the plaintiff's most basic constitutional rights," including his Sixth Amendment right to the effective assistance of counsel. (*Id.* at 5).

More specifically, Grondin appears to make the following claims against the various defendants.[1] He alleges that the Wood County Prosecutor's Office, and prosecuting attorneys Ginny Conley and Jason Wharton, (1) offered testimony to the grand jury from a second alleged victim that was later proven to be false; (2) engaged in malicious prosecution; (3) delayed Grondin's sentencing to avoid addressing issues associated with criminal charges filed against Judge Hill; and (3) delayed a ruling on Grondin's state habeas petition until his sentence was discharged. (ECF Nos. 2 at 5, 75). Grondin also claims that the Wood County Probation Department falsified court documents to prevent Grondin from receiving probation. (ECF No. 2 at 5). In addition, he contends that the Supreme Court of Appeals of West Virginia ("WVSCA") allowed

---

[1] Grondin's precise allegations against each of the defendants as set forth in the complaint are somewhat ambiguous. Therefore, the undersigned has also relied on Grondin's responses to the various dispositive motions to comprehend the substance of his claims.

Judge Hill to accept a guilty plea when he had no authority to do so; thereby, giving rise to an irreconcilable conflict of interest that would later prevent Grondin from appealing his conviction. He adds that the WVSCA's Administrative Director, Steven Canterbury, wrongfully refused to honor a subpoena issued in Grondin's state habeas proceeding that was designed to shed light on Judge Hill's conduct and uncover the WVSCA's conflict. (ECF No. 76 at 4-6). Grondin sues eight (8) lawyers appointed by the court to represent him in the criminal and habeas proceedings, including Ernest Douglas, Joseph Santer, John Ellem, William Summers, Courtney Alhorn, Joseph Troisi, Patrick Radcliff, and Paul Marteny, arguing that they provided ineffective assistance of counsel. (ECF No 2 at 5). Further, Grondin sues the West Virginia Lawyer Disciplinary Board for not ensuring the effectiveness of his lawyers and for denying his written complaints against them. (ECF No. 77). Finally, Grondin sues the West Virginia Division of Corrections, stating that while "incarcerated at St. Mary's correctional the prisoner was deceived and persecuted falsely and locked up in order to keep [him] from a parole hearing," that his "legal mail was opened [and] stolen," and that he "was threatened retaliation by staff to stop inquiring into [his] habeas petition in pursuit of evidence." (ECF No. 2-1 at 4). For relief, Grondin seeks "damages, legal interest, damages for mental and emotional distress, punitive damages, injunctive relief and such other and further relief as may upon the premeses *[sic]* be appropriate." (ECF No. 2 at 5).

Many of the defendants filed Motions to Dismiss and Motions for Summary Judgment between August 21, 2013 and September 11, 2013. (ECF Nos. 27, 30, 31, 35, 39, 43, 50, 54, 58). The undersigned granted Grondin two extensions to file his

responses, which were due on December 13, 2013. (ECF Nos. 64, 66). On December 26, 2013, Grondin filed responses in opposition to a dismissal of each defendant, (ECF Nos. 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78), and on January 2, 2014, several defendants replied. (ECF Nos. 81, 82, 83, 84). Accordingly, these matters are ready for disposition.

### III.   <u>Motions to Dismiss</u>

Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6) have been filed by (1) Ginny Conley, Jason Wharton, and the Wood County Prosecutor's Office; (2) the West Virginia Supreme Court of Appeals, Steven Canterbury, the Wood County Probation Department, and Jeffrey Nuckolls; (3) the West Virginia Division of Corrections; and (4) court-appointed counsel, William B. Summers and Joseph Troisi. (ECF Nos. 27, 30, 31, 35, 39, 43, 58). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute, *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982), while a motion under Rule 12(b)(6) tests the sufficiency of the complaint to state a claim. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face").

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.*

*Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991). Second, the movant may contend, as the defendants have done here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the party asserting it. *Johnson v. North Carolina*, 905 F.Supp.2d 712, 719 (W.D.N.C. 2012). Nevertheless, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id. (*quoting *Adams,* 697 F.2d at 1219)*.*

　　Rule 12(b)(6) permits the district court to dismiss a complaint that fails to state a claim upon which relief may be granted. A complaint fails to state a compensable claim when, viewing the well-pleaded factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.,* 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679. Courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However,

even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading "to include claims that were never presented," *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only 'where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Calif. Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir. 2008)).

Applying these principles, the undersigned has accepted as true all well-pled allegations and construed the complaint in the light most favorable to Grondin. *Beckham v. Nat'l. R.R. Passenger Corp.,* 569 F.Supp.2d 542, 547 (D.Md. 2008). In addition, the undersigned has considered the documents attached to the complaint, motions to dismiss, and responses to the extent that they are integral to the complaint and authentic. *See Phillips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)

### A.  Wood County Prosecutor's Office, Ginny Conley, Jason Wharton

Grondin names the Wood County Prosecutor's Office, former Wood County Prosecutor Ginny Conley, and current Wood County Prosecutor Jason Wharton as defendants in the instant action, (ECF No. 2 at 1, 4), alleging malicious prosecution

and prosecutorial misconduct. (*Id.* at 5). In order to state a § 1983 claim for malicious prosecution, a plaintiff must allege that the defendant "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012); *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009) ("While it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure.") (internal citations omitted); *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (holding that a "malicious prosecution" claim under § 1983 is "simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution-specifically, the requirement that the prior proceeding terminate favorably to the plaintiff"). When evaluating a claim of malicious prosecution, the court must bear in mind that "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Durham*, 690 F.3d at 189 (quoting *Gerstein v. Pugh,* 420 U.S. 103, 117 n.19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)).

Here, Grondin cannot demonstrate malicious prosecution because probable cause supported his arrest, and the criminal proceedings were not terminated in his favor. Although Grondin alleges that the grand jury "heard testimony from another alleged victim from which [Grondin] was never charged, and was proven later to be false," he does not explicitly allege that his arrest and indictment on the four counts of

sexual abuse charged against him were unsupported by probable cause. (ECF No. 2 at 4). Furthermore, in his response to the defendants' dispositive motion, Grondin concedes that additional evidence was supplied by a West Virginia State Trooper, who testified before the Grand Jury regarding an incriminating telephone conversation between Grondin and the father of the alleged victim.[2] Members of the Grand Jury freely asked questions of the witness and concluded that probable cause existed to indict Grondin. (ECF No. 75). Thus, Grondin was indicted by a properly constituted grand jury on May 12, 2005. He subsequently pled guilty to two of the four criminal counts against him, was adjudicated guilty, and was sentenced. (ECF No. 50-1 at 11-22). Grondin did not appeal his conviction, and his state petition for habeas corpus relief was denied on May 5, 2011. (ECF No. 27-1). Therefore, because Grondin has failed to make the requisite showings, his malicious prosecution claim must fail.

To the extent Grondin seeks damages for other prosecutorial misconduct, Defendants Conley and Wharton are protected by absolute prosecutorial immunity. In *Imbler v. Pachtman*, the United States Supreme Court held that a prosecutor enjoys absolute immunity from suit for conduct "in initiating a prosecution and in presenting the State's case." 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court explained:

> A prosecutor is duty bound to exercise his best judgment both in deciding
> which suits to bring and in conducting them in court. The public trust of

---

[2] Indeed, the Wood County Circuit Court found in Grondin's state habeas proceeding that "[a] review of the transcript and minutes of the May 2005 term of the Wood County Grand Jury, indicates that the principal and primary, if not the sole, evidence relied upon in the indictment of [Grondin] was the testimony of the investigating officer and his presentation of a recorded telephone call between the victim's father and [Grondin]. The recording of the telephone call is strong evidence against [Grondin's] continual insistence in this case that he did not commit the crime to which he pled guilty." (ECF No. 27-1 at 7-8).

> the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Id.* at 424-25. Although the Court in *Imbler* declined to delineate the specific prosecutorial functions that give rise to absolute immunity, the Fourth Circuit Court of Appeals has repeatedly held that a prosecutor is entitled to absolute immunity for claims that rest on his or her decisions regarding "whether and when to prosecute." *Lyles v. Sparks,* 79 F.3d 372, 377 (4th Cir. 1996) (quoting *Imbler,* 424 U.S. at 431 n.33); *see also Ehrlich v. Giuliani,* 910 F.2d 1220, 1222-23 (4th Cir. 1990). Similarly, when a prosecutor appears for the State at a probable cause hearing, or performs other functions that "necessarily implicate the prosecutor's role in the judicial process," he or she is entitled to absolute immunity. *Carter v. Burch,* 34 F.3d 257, 262 (4th Cir. 1994). Simply stated, absolute immunity is afforded to prosecutors when acting "within the advocate's role." *Buckley v. Fitzsimmons,* 509 U.S. 259, 278, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *see also Nivens v. Gilchrist*, 444 F.3d 237, 250 (4th Cir. 2006) (explaining that "prosecutors should be afforded absolute immunity when their activities were intimately associated with the judicial phase of the criminal process") (internal quotations omitted).

In this case, Grondin alleges that Defendant Conley presented information to the grand jury that was later determined to be false and "refuse[d] to move the Court for hearings" despite being aware that Grondin wanted to rescind his guilty plea following Judge Hill's resignation. (ECF No. 75 at 1-5). Grondin further claims a "pattern of cooperation between Jason Wharton," the courts, and appointed counsel,

10

which delayed and tainted the habeas proceedings, although Grondin fails to describe specific misconduct by Defendant Wharton. (*Id.* at 5-7). In any event, the conduct challenged by Grondin clearly occurred in the judicial phase of the criminal process and plainly falls within the scope of prosecutorial duties protected by absolute immunity. *See Lyles,* 79 F.3d at 377 (4th Cir. 1996) (prosecutor entitled to absolute immunity from claims that she made misrepresentations and suborned perjury before grand jury).

Similarly, Grondin names the Wood County Prosecutor's Office as a defendant, but fails to attribute any specific conduct to the Office. If Grondin seeks to hold the Wood County Prosecutor's Office liable as the employer of Defendants Conley and Wharton, he has failed to state a cognizable claim, as the law is clear that "municipalities are not liable pursuant to respondeat superior principles for all constitutional violations of their employees simply because of the employment relationship." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); *Connick v. Thompson*, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) ("[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions.") (internal marks omitted). While a municipality may be liable under § 1983 when a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom or policy, the plaintiff must expressly identify the suspect law, custom, or policy in his complaint. *See Bd. of County Comm'rs of Bryan County v. Brown*, 520

11

U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S,Ct, 915, 99 L.Ed.2d 107 (1988) ("[M]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered.") (internal quotations omitted); *Edwards*, 178 F.3d at 244 (municipal liability results when the execution of an unconstitutional governmental policy or custom inflicts injury); *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) ("Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights."). In Grondin's case, he fails to specify any particular law, policy, custom, or other action of the County Prosecutor's Office that resulted in a violation of federal law.

Therefore, the undersigned **FINDS** no factual basis to sustain a claim against these defendants and **RECOMMENDS** that the United States District Judge **GRANT** the defendants' Motions to Dismiss, (ECF Nos. 27, 31), and **DISMISS** the complaint as to Ginny Conley, Jason Wharton, and the Wood County Prosecuting Attorney's Office.

### B.  Supreme Court of West Virginia, Steven Canterbury

Grondin names the West Virginia Supreme Court of Appeals and its Administrative Director, Steven Canterbury, as defendants in the instant action. (ECF

No. 2 at 1, 4). Although the claims against these defendants are not entirely clear, Grondin appears to hold the WVSCA responsible for allowing Judge Hill to accept a guilty plea when he purportedly lacked authority to do so, and Canterbury responsible for not providing documents or testimony that Grondin sought for his habeas proceeding.

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court of the United States has construed the Amendment to "establish that 'an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state.'" *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (2009) (quoting *Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). The immunity created by the Amendment protects both "the State itself and its agencies, divisions, departments, officials, and other 'arms of the State.'" *Taylor v. Ozmint,* Case No. 0:10-50-HMH-PJG, 2011 WL 286133, at *2  (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58,  70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Regents of the Univ. of California v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain

actions against state agents and state instrumentalities."). Thus under the Eleventh Amendment, the WVSCA, which is a state entity, and the WVSCA's Administrator, when sued in his official capacity, are immune from suit for money damages in federal court. *See Lewis v. West Virginia Supreme Court of Appeals*, No. 2:13-cv-13110, 2013 WL 6334103, at *5 (S.D.W.Va. Dec. 5, 2013) (collecting cases).

Apart from this jurisdictional prohibition, Grondin simply states no cognizable claim against the WVSCA or Mr. Canterbury. Grondin believes that he was wrongfully denied a trial and that his plea agreement was not properly accepted by a judge in the Fourth Judicial Circuit Court of West Virginia. (ECF No. 2 at 5). In general, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *see also Ballenger v. Owens*, 515 F. App'x 192, 193 n.2 (4th Cir. 2013). Grondin obviously is unable to meet this requirement given the dismissal of his habeas petition.

However, in *Wilson v. Johnson*, the Fourth Circuit Court of Appeals concluded that "[i]f a prisoner could not, as a practical matter, seek habeas relief, and after release, was prevented from filing a § 1983 claim, § 1983's purpose of providing litigants with 'a uniquely federal remedy against incursions under the claimed authority of state law upon right secured by the Constitution and laws of the Nations'

would be severely imperiled." 535 F.3d 262, 268 (4th Cir. 2008) (quoting *Wilson v. Garcia*, 471 U.S. 261, 271-72, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). Thus, courts in this circuit have carved out an exception to the *Heck* "favorable-termination requirement" under certain circumstances in which "a habeas ineligible former prisoner [is] seeking redress for denial of his most precious right—freedom." *Id.*; *see also Campbell v. Beckley Police Dept.*, 390 Fed.App'x 246, 248 (4th Cir. 2010). Still, "*Wilson* does not permit a plaintiff to end-run *Heck* by simply sitting on his rights until all avenues for challenging a conviction have closed." *Bishop v. County v. Macon*, 484 Fed.App'x 753, 755 (4th Cir. 2012). Instead, the plaintiff must demonstrate "that habeas relief was unavailable during that time, practically or otherwise." *Id.*; *see also Ballenger*, 515 Fed.App'x at 195 n.5 ("Not only was [the plaintiff's 10 years imprisonment] sufficient time to pursue post-conviction relief, [he] actually did so and was unsuccessful."); *Gilchrist v. Pinson*, No. 5:11-01746-MBS, 2013 WL 3946278, at *6 (D.S.C. Jul. 31, 2013) (distinguishing case from *Wilson*); *Lewis v. City of Clarksburg*, No. 1:11-cv-192, 2013 WL 529954, at *8 (N.D.W.V. Feb. 11, 2013) (same).

In the present case, Grondin was sentenced on May 12, 2006 to two consecutive terms of 1-to-5 years of imprisonment each. (ECF No. 39-1 at 10). Grondin timely filed a state petition for habeas relief, (*Id.* at 12), which was not decided by the state Circuit Court until May 5, 2011. (ECF No. 27-1). Grondin apparently did not become aware of the denial of his habeas petition until six days later, on May 11, 2011, which was also the date of his discharge from prison. (ECF No. 2-1 at 4). Therefore, the undersigned will assume for the purpose of this discussion that Grondin is exempt from the *Heck* favorable-termination requirement due to his inability to satisfy the § 2254 exhaustion

requirements before being released from prison, *see* 28 U.S.C. § 2254(b)(1)(A) (precluding federal habeas relief until "the applicant has exhausted the remedies available in the courts of the State") and may proceed with this claim. Even still, Grondin's claim fails because he cannot establish a factual basis to support the existence of a constitutional violation.

The undisputed facts show that Grondin did not have a trial because he reached a plea agreement and pled guilty to two of the four counts against him. (ECF No. 39-1 at 5-6). Both the plea agreement and the guilty plea were entered at his plea hearing before Judge Hill on December 5, 2005. (ECF No. 27-1 at 3 n.1; 39-1 at 7-8). Grondin now believes that "former Judge Hill should have not been allowed to rule in [his] case and very surely other cases as well," (ECF No. 2-1 at 4), and alleges that on February 3, 2006, he learned that Judge Hill "had been removed by the State Police from the 4th Circuit Court due to a complaint by employees working at the court house," (ECF No. 67 at 1). Grondin refers to a separate and unrelated sexual harassment suit apparently filed against Judge Hill and the West Virginia Supreme Court of Appeals in 2008. (ECF Nos. 2-1 at 4; 76-3; 76-4; 76-5). However, the fact that Judge Hill was named as a defendant in a separate and unrelated civil action bears no relationship to whether he lacked authority to preside over Grondin's criminal proceeding. Moreover, as reflected in an affidavit provided by the Clerk of the West Virginia Supreme Court of Appeals, "there is no record the George W. Hill, Jr., a former Wood County Circuit Judge was suspended on December 8, 2005 or at any time before February 28, 2006," the date of Judge Hill's resignation. (ECF No. 27-1 at 14-15; 39-1 at 24). Likewise, in a FOIA response provided by the West Virginia State Police, Sergeant G.L. Brown, II

16

unequivocally informed Grondin that "there were no complaints filed by [the state police] office regarding former Judge Hill by Karen Holub in Wood County," and therefore no investigation, no search warrants, no evidence, and no charges were brought against Judge Hill. (ECF No. 78-1).[3] Grondin has failed to allege any facts which, if true, would demonstrate that Judge Hill lacked authority to preside over his plea hearing.[4]  Finally, Grondin was not convicted of the crimes to which he pled until May 12, 2006, when he appeared before Judge Holliday.

Additionally, Grondin alleges (1) that "the Supreme Court of W.V. could not rule on behalf of the complainee because the Supreme Court was a defendant in *Holub v. George Hill and the Supreme Court*, ergo conflict of interest to the highest court in West Virginia," (ECF No. 2 at 5); (2) that he "was not allowed to use the freedom of information act to the West Virginia Supreme Court to acquire testimony of the proceeding concerning former Judge Hill," (ECF No. 2-1 at 4), and (3) that the state Supreme Court acted in collusion with the prosecutor's office and his appointed counsel. (*Id.*). These additional allegations also fail to establish any cognizable claim under § 1983.

---

[3] *See Phillips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record. We may also consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.") (internal citations omitted); *see also Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Witthohn v. Fed. Ins. Co.*, 164 Fed.App'x 395, 397 (4th Cir. 2006) (holding that a district court may take judicial notice of public records filed in state court).

[4] Grondin also lists as claims in his complaint, "Fraud by deception," and "Falsefying *[sic]* court document to cover up the resignation due to criminal charges against Former Judge George Hill, deceased." (ECF No. 2 at 5). However, Grondin wholly fails to support either claim with any factual allegations identifying the defendants, describing the alleged fraudulent activity or the court documents that were falsified, or explaining how this alleged cover-up deprived him of any constitutional rights independent from his claim that his conviction was invalid. (ECF No. 2 at 5).

First, it is not entirely clear if Grondin is contesting the validity of a state Supreme Court decision based upon an alleged "conflict of interest," or if he merely believes that the state Supreme Court lacked jurisdiction to review his criminal claim regarding Judge Hill due to a "conflict of interest." If Grondin is contesting the validity of a state Supreme Court decision, he must seek review from the United States Supreme Court, as the federal District Court "has no authority to review final judgments of a state court in judicial proceedings" as "[r]eview of such judgments may be had only in [the United States Supreme] Court." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Second, Grondin's assertion that the WVSCA denied his FOIA request for testimony fails to state a violation of federal law. Grondin admits as much in his subsequent statement that "[c]oncerning the defendant Steve Canterbury and the[state] Supreme Court, the plaintiff now acknowledges that the Administrative Office was not the proper office to obtain the transcripts in the matters of the criminal complaints and the resignation hearing(s) of former Judge Hill." (ECF No. 76 at 4). Finally, Grondin's allegation that the WVSCA "colluded" with the prosecutor's office and his appointed counsel is entirely speculative, as it is unsupported by any factual allegations.

Regarding Defendant Canterbury, Grondin contends that he subpoenaed Canterbury, among others during his state habeas proceeding, but Canterbury opposed the subpoena. (ECF No. 2-1 at 3). According to records supplied by Defendant Canterbury, he indeed made a motion to quash the subpoena, which was granted by the habeas court. (ECF No. 39-1 at 26-28). Grondin fails to elucidate how Canterbury's properly-filed and successful motion violated Grondin's constitutional rights, and the

undersigned cannot conceive of a circumstance where seeking relief from a subpoena in a court of competent jurisdiction would constitute a deprivation of the adversary's federal rights. Consequently, Grondin fails to allege sufficient facts demonstrating a cognizable claim under § 1983.

Accordingly, the undersigned **FINDS** no factual basis to sustain a claim against either Steven Canterbury or the Supreme Court of Appeals of West Virginia and respectfully **RECOMMENDS** that the United States District Judge **GRANT** the defendants' Motions to Dismiss, (ECF No. 39), and **DISMISS** the complaint against both defendants.

### C.  Wood County Probation Department, Jeffrey Nuckolls

Grondin names the Wood County Probation Department and Chief Probation Officer Jeffrey Nuckolls as defendants in the instant action. (ECF No. 2 at 1, 4). He accuses the Probation Department of falsifying documents, "in order to not allow defendant probation in order to present his case to another judge after the resignation of Judge Hill." (*Id.* at 5). As discussed above, Grondin has not alleged any facts demonstrating that Judge Hill lacked authority to preside over his plea hearing on December 5, 2005, and has similarly failed to explain why Judge Hill's subsequent resignation necessitated the presentation of Grondin's case to another judge. Additionally, Grondin fails to explain how the Probation Department's actions harmed him, as he readily acknowledges that he was "free on bail until sentencing on May 12, 2006." (ECF No. 2-1 at 2). Moreover, Grondin was not prevented from presenting his case to another judge, as he was not adjudicated guilty of the charged offenses until his hearing before Judge Holliday on May 12, 2006, during which he was represented by

19

appointed counsel. (ECF No. 27-1 at 12, 39-1 at 2, 9).

Elsewhere, Grondin alleges that the Probation Department falsified his past criminal record by including a false drug possession charge in his post-sentence report, which negatively affected his classification status and prevented him from being "given outside clearance to work." (ECF No. 2-1 at 2; ECF No. 76 at 2-3). However, the false charge that Grondin alleges appears to be a typographical error, in which a charge for "Possession for Contraband Drugs" in Brentwood, New Hampshire was incorrectly dated "3/2/05" instead of 3/2/75," although correctly listed in chronological order. (ECF No. 76-1 at 3-4). Such conduct could at best be characterized as negligent, and therefore does not amount to a cognizable claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (holding that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property"); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) ("[N]egligent deprivations of life, liberty, or property are not actionable under 42 U.S.C. § 1983"); *Mitchell v. Aluisi*, 872 F.2d 577, 579 (4th Cir. 1989); *see also Harper v. Currituck County Clerk of Courts*, No. 5:06-CT-3004-D, 2006 WL 4719768, at *2 (E.D.N.C. Nov. 16, 2006) (no liability under § 1983 for clerk of court who miscalculated plaintiff's criminal sentence); *Grate v. White*, No. 4:07-2949-HMH-TER, 2007 WL 2903991, at *3 (D.S.C. Oct. 2, 2007) (no liability under § 1983 for clerk who negligently failed to serve order on the state Attorney General). Rather, the official's conduct must "entail some measure of deliberateness" in effectuating a constitutional deprivation. *Pink*, 52 F.3d at 75; *see also Rutherford v. City of Newport News, Va.*, 919 F.Supp. 885, 890 (E.D. Va. 1996). Grondin simply fails to allege

20

sufficient facts demonstrating a constitutional violation.

Although Grondin names Jeffrey Nuckolls as a defendant, he alleges no specific conduct relating to Defendant Nuckolls. Accordingly, the undersigned concludes that Grondin sued Defendant Nuckolls in his capacity as Chief Probation Officer, rather than for action or inaction on his part. Defendant Nuckolls argues that when sued in his official capacity, he is a state agent entitled to Eleventh Amendment immunity from money damages. (ECF No. 40 at 12-13). While this assertion may certainly be true, an analysis of Nuckolls's right to Eleventh Amendment immunity is unnecessary given the complete lack of factual allegations stating a plausible claim against him. Even assuming for the purpose of argument that Grondin intended to sue Defendant Nuckolls because he played a role in creating the erroneous presentence report, Nuckolls is still entitled to dismissal of the complaint under the theory of quasi-judicial immunity. *Gant v. United States Probation Office,* 994 F.Supp. 729, 733 (S.D.W.Va. 1998) ("One function for which probation officers uniformly have been granted absolute immunity is the preparation of presentence reports") (collecting cases). As the *Gant* court explained, "probation officers act 'as an arm of the court' when amassing and providing the court enough information to meaningfully perform its sentencing obligations." *Id.* (quoting *Dorman v. Higgins,* 821 F.2d 133, 137 (2d Cir. 1987)). Consequently, "to assure candor in this relationship, probation officers must not be subject to harassing and vexatious litigation brought by convicted offenders who are predictably unhappy about their sentences." *Schiff v. Dorsey,* 877 F.Supp. 73, 77 (D.Conn. 1994).

Thus, the undersigned **FINDS** these claims to be fundamentally insufficient to

21

state a § 1983 case and respectfully **RECOMMENDS** that the United States District Judge **GRANT** the defendants' Motion to Dismiss, (ECF No. 39), and **DISMISS** the complaint as to Defendant Jeffrey Nuckolls and the Wood County Probation Department.

### D. West Virginia Department of Corrections

Grondin names the West Virginia Division of Corrections as a defendant in the action. (ECF No. 2 at 1). Grondin complains that while incarcerated at St. Mary's Correctional Center, (1) he was "deceived and persecuted falsely and locked up in order to keep [him] from a parole hearing," (ECF No. 2-1 at 4); (2) his legal mail was opened and certain pages of legal documents were stolen, (*Id.*); and (3) he was "threatened retaliation by [correctional] staff to stop inquiring into [his] habeas petition in pursuit of evidence." (*Id.*).

The West Virginia Division of Corrections is obviously an "arm of the State" of West Virginia, and is therefore entitled to immunity from suit in federal court. *See* W. Va. Code § 25-1-1 (establishing the West Virginia Department of Corrections); *Harvey v. West Virginia Parole Bd.*, No. 3:10-cv-00724, 2011 WL 3843816, at *4 (S.D.W.V. Jul. 11, 2011); *see also Roach v. West Virginia Reg'l Jail and Corr. Facility*, 74 F.3d 46, 48 (4th Cir. 1996) (Eleventh Amendment bars § 1983 suit against West Virginia Regional Jail Authority, a state agency); *see also Roach v. Burch*, 825 F.Supp. 116, 117 (N.D.W.V. 1993) (same); *Reffitt v. Nixon*, 917 F.Supp. 409, 413 (E.D. Va. 1996) (holding that the Virginia Department of Corrections is an arm of the state entitled to immunity from § 1983 suits). The Division of Corrections is also not a qualifying "person" amenable to suit under § 1983. *See Goodmon v. Rockefeller*, 947 F.2d 1186,

1187 (4th Cir. 1991) (affirming district court's dismissal of Director of West Virginia Department of Corrections and corrections officers sued in their official capacities, but reversing dismissal for defendants sued their individual capacities); *see also Will*, 491 U.S. at 71; *Strickler v. Waters*, 989 F.2d 1375, 1388 (4th Cir. 1993) (holding that Virginia Department of Corrections is not a person under § 1983); *Woodley v. City of Richmond*, No. 90-6399, 1991 WL 77666, at *1 (4th Cir. May 15, 1991) (same).

Even if Grondin were to replace the Division of Corrections with an individual corrections officer, his conclusory allegations of (1) being deceived, persecuted, and wrongfully "locked up in order to keep [him] from a parole hearing," (2) legal mail tampering, and (3) being threatened with retaliation for pursuing evidence in his habeas proceedings, (ECF No. 2-1 at 4), do not give rise to a cognizable claim. First, the Fourth Circuit has repeatedly "declined to hold that, as a constitutional matter, each prisoner must 'receive a personal hearing, have access to his files, or be entitled to call witnesses in his behalf to appear before the Board.'" *Burnette v. Fahey*, 687 F.3d 171, 182 (4th Cir. 2012) (quoting *Franklin v. Shields*, 569 F.2d 784, 800 (4th Cir. 1978)); see also *Fleming v. Murray*, 888 F.Supp. 734, 738 (E.D. Va. 1994) ("There is neither a right of cross-examination nor a right to attend in person or to have counsel at a parole hearing."). Thus, if Grondin had a protected liberty interest in being considered for parole, his allegations are insufficient to demonstrate that this interest was violated. *See Cleveland v. Kunkle*, No. 86-6781, 1987 WL 38301, at *1 (4th Cir. 1987). Grondin fails to describe who deceived, persecuted, and locked him up, and what actions any individual took in doing so. Grondin also does not provide an approximate time frame for the alleged violations, or even state whether he was in fact denied or delayed in

receiving a parole hearing.

Second, while prisoners have constitutional rights to meaningful access to the courts, correctional facilities concurrently have legitimate, constitutionally valid reasons for inspecting the mail sent and received by inmates. *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Whether the actions of a correctional facility violate constitutional protections depends on factors such as the nature of the alleged violation; the penological purpose purportedly advanced by the challenged act; whether the mail was incoming or outgoing; whether it was legal mail; and whether the alleged wrongful act was isolated or was part of an impermissible pattern and practice. Thus, "mere speculation that the Defendants tampered with Plaintiff's legal mail is insufficient to state a cognizable § 1983 claim." *Martin v. Byars*, C/A No. 4:13–cv–2067 DCN, 2013 WL 5316393, at *2 (D.S.C. Sept. 20, 2013). Additionally, the complaining prisoner must show an actual injury associated with the tampering of his mail. *See Rivera v. Byers,* No. 8:12-cv-02469-JMC, 2013 WL 3894843, at *7 n.7 (D.S.C. July 25, 2013); *see also Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (requiring "actual injury" to demonstrate denial of access to the courts); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (same).

Grondin alleges that while incarcerated, various unnamed "mailroom employees and counselors and unit managers [ ] assisted in the systemic violations of tampering and confiscating/stealing" his legal mail and correspondence, (ECF No. 78 at 3), which included periodically opening his legal mail and making copies "to bring to the administration building" for an unknown purpose, as well as failing to send

24

Grondin's outgoing mail and failing to give Grondin all of his incoming mail. (*Id.* at 4). Specifically, Grondin recounts difficulties (1) attempting to correspond with the "the Rockingham Superior Court Clerk, and the County Sheriff's Department in the State of New Hampshire" regarding his 1975 criminal charge, beginning in November of 2008. (*Id.* at 5); (2) attempting to seek information from the West Virginia State Police in 2008 and 2009. (*Id.* at 6); (3) receiving a letter from a friend, which contained case law that Grondin intended to use in his habeas proceedings. (ECF Nos. 78-4, 78-5). Nonetheless, Grondin fails to explain how these purported violations affected his state court proceedings or otherwise deprived him of meaningful access to the courts. Accordingly, Grondin's claim of mail tampering fails to state a constitutional violation.

Third, although "[r]etaliation against an inmate for the exercise of his right to access the courts states a cognizable claim," the plaintiff "must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than de minimis inconvenience." *McFadden v. Lewis*, 517 Fed.App'x 149, 150 (4th Cir. 2013). As the Fourth Circuit Court of Appeals has explained:

> [T]he plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than de minimis inconvenience. The prisoner need not succumb entirely or even partially to the threat; it is sufficient that the retaliation was intended to limit the prisoner's right of access to the court and was reasonably calculated to have that effect. However, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension.

*Id.* (internal marks and citations omitted). Grondin alleges that he received a fax from the West Virginia State Police stating that "this was there *[sic]* third and last reply to

[his] request" for information, and that he was subsequently "confronted with this fax [and] threatened retaliation by staff to stop inquiring into [his] habeas petition in pursuit of evidence." (ECF No. 2-1 at 4). Grondin does not allege any additional facts supporting his claim of retaliation, nor does he describe any "chilling effect" or inconvenience suffered as a result of the staff's purported threat of retaliation. To the contrary, records from Grondin's state habeas proceeding reflect that three "Omnibus Evidentiary Hearings were held before the [Circuit] Court ... wherein testimony was presented, evidence admitted, and arguments of counsel made." (ECF No. 27-1 at 2).

Grondin wholly fails to provide any supporting facts which, if true, would "be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 550 U.S. at 555. Accordingly, Grondin's claims relating to the Division of Corrections and its employees are insufficient to state a constitutional violation.

Consequently, the undersigned **FINDS** that the West Virginia Division of Corrections is entitled to Eleventh Amendment immunity from suit and respectfully **RECOMMENDS** that the United States District Judge **GRANT** defendant's Motion to Dismiss, (ECF No. 43), and that this defendant be **DISMISSED** from this action.

### E.  West Virginia Lawyer Disciplinary Board

Grondin names the West Virginia Lawyer Disciplinary Board as a defendant in the action, (ECF No. 2-1 at 1), alleging ineffective assistance of counsel apparently for failing to ensure that his appointed counsel provide adequate representation. (ECF No. 77 at 1). Grondin also alleges that the Office of Disciplinary Counsel violated his due process rights by failing to hold a hearing on any of his attorney complaints. (*Id.* at 4).

Once again, Grondin's claims must fail because the Lawyer Disciplinary Board

constitutes an "arm of the state," and is entitled to immunity from suit. The West Virginia Lawyer Disciplinary Board and the Office of Disciplinary Counsel were created by the West Virginia Bar pursuant to the West Virginia State Bar Constitution, art. IV. The State Bar "is a part of the judicial department of the West Virginia state government, created for the purpose of enforcing such rules as may be prescribed." *Allstate Ins. Co. v. West Virginia State Bar*, 233 F.3d 813, 819 (4th Cir. 2000). Thus, "[t]he State Bar is an agency of the West Virginia Supreme Court of Appeals, and not an independent agency." *Id.* This conclusion is consistent with other jurisdictions which have similarly held that state judicial conduct and attorney conduct review boards are state agencies entitled to immunity from suit. *See McKeown v. NY State Comm'n on Judicial Conduct*, 377 Fed.Appx. 121, 122-23 (2d Cir. 2010) (Office of Court Administration of the Unified Court System of New York; Departmental Disciplinary Committee of the New York Appellate Division, First Department; New York State Grievance Committee, Ninth Judicial District; and New York State Commission on Judicial Conduct); *Madden v. Vermont Supreme Court*, 236 Fed. Appx. 717, 718 (2d Cir. 2007) (Vermont Judicial Conduct and Professional Responsibility Boards); *Krempp v. Dobbs*, 775 F.2d 1319, 1321 (5th Cir. 1985) (Texas State Bar and State Commission on Judicial Conduct); *Moncier v. Jones*, 803 F.Supp.2d 815, 827-28 (E.D. Tenn. 2011) (Tennessee Board of Professional Responsibility); *Democracy Rising PA v. Celluci*, 603 F.Supp.2d 780, 795-96 (M.D. Pa. 2009) (Pennsylvania Judicial Conduct Board and Office of Disciplinary Counsel); *Hunter v. Supreme Court of New Jersey*, 951 F.Supp. 1161, 1177 (D.N.J. 1996) (New Jersey Advisory Committee on Judicial Conduct).

Thus, the undersigned **FINDS** the West Virginia Lawyer Disciplinary Board is immune from suit under § 1983, and respectfully **RECOMMENDS** that the United States District Judge **GRANT** defendant's Motion to Dismiss, (ECF No. 58), and that this defendant be **DISMISSED** from this action.

### F.  Joseph Troisi, William Summers

Grondin names former attorneys Joseph Troisi and William Summers as defendants in the instant action, and alleges that he received ineffective assistance of counsel from both defendants. (ECF No. 2 at 5; 2-1 at 1-3). Defendants Troisi and Summers served as appointed counsel for Grondin in his state habeas proceedings. (*Id.* at 3). Grondin complains that Defendant Troisi failed to communicate with him for eight months, forcing Grondin to get the WVSCA involved. According to Grondin, Defendant Troisi subsequently joined the Wood County Prosecutor's Office, and suddenly one Friday, Grondin had a new appointed lawyer, Defendant Summers. (*Id.).* Grondin complains that Defendant Summers "did as little as possible," and stalled the habeas proceeding as long as he could. At that point, Defendant Summers was also replaced with new counsel. (ECF No. 73).

The law is well established that an attorney, whether retained, court-appointed, or a public defender, does not act under color of state law when performing the traditional functions of a lawyer and, therefore, is not amenable to suit under § 1983. *Polk County v. Dodson*, 454 U.S. 312, 317-24, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (stating that public defenders representing defendants in criminal proceedings do not act under the color of state law for § 1983 purposes); *Hall v. Quillen*, 631 F.2d 1154, 1155-56, n.2, 3 (4th Cir. 1980) (observing that court-appointed counsel does not act

28

under the color of state law for § 1983 purposes); *Deas v. Potts,* 547 F.2d 800, 800 (4th Cir. 1976) (holding that private counsel retained by a defendant in criminal proceedings does not act under the color of state law for § 1983 purposes). Grondin's claims of ineffective assistance of counsel relate specifically to the defendants' traditional function as attorneys, and center on acts clearly within the range of functions regularly performed by attorneys. (ECF Nos. 67, 68, 69, 70, 71, 72, 73, 74). Given that the court-appointed attorneys in this case did not act under color of state law, Grondin offers no legitimate basis upon which to maintain this civil action against them.

Therefore, the undersigned **FINDS** that Joseph Troisi and William Summers are not state actors subject to suit under § 1983 and respectfully **RECOMMENDS** that the United States District Judge **GRANT** defendants' Motions to Dismiss, (ECF Nos. 30, 35), and that these defendants be **DISMISSED** from this action.

## IV.  <u>Motions for Summary Judgment</u>

Defendants John Ellem and Ernest Douglass have filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (ECF Nos. 50, 54). Summary judgment should be granted if the movant shows, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact is

present. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). A "material fact" is a fact that might affect the outcome of a party's case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Id.* In addition, only *genuine* disputes over material facts "will properly preclude the entry of summary judgment." *Id.*; *JKC Holding Co. v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. County of Prince William,* 249 F.3d 295, 299 (4th Cir. 2001) (citing *Anderson,* 477 U.S. at 248).

Once the moving party has met its burden to demonstrate the absence of a genuine dispute of material fact, the non-moving party must affirmatively respond with specific evidence "showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985) (citing *Barwick v. Celotex Corp.,* 736 F.2d 946, 963 (4th Cir. 1984)). Thus, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. When considering a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial." *Id.* at 249. In making this determination, the court will view the evidence in the light most favorable to the non-moving party and draw from it all permissible inferences in that party's favor. *Diebold, Inc.,* 369 U.S. at 655; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587-88.

Grondin names former attorneys Ernest Douglass and John Ellem as defendants in the instant action, and alleges that he received ineffective assistance of counsel from both defendants. (ECF No. 2 at 5; 2-1 at 1-3). Defendants Douglass and Ellem served as appointed counsel for Grondin in his state criminal and habeas proceedings, respectively. (ECF Nos. 50 at 1; 54 at 2). Grondin accuses Defendant Douglass of refusing to withdraw his plea agreement despite Grondin's request that he do so. (ECF No. 2-1 at 2). Grondin accuses Defendant Ellem of (1) refusing to file an appeal with the West Virginia Supreme Court despite his request that he do so; (2) doing everything in his power to foil Grondin's habeas petition, including filing an amended petition that contained false information; and (3) behaving shamefully and in a way that "did not represent the people of [West Virginia] honorably." (*Id.* at 2-3). As discussed above, *see* Part. III.F, in their roles as court-appointed counsel representing Grondin, the defendants did not act under color of state law, and consequently are not amenable to suit under § 1983.

Therefore, the undersigned **FINDS** that Ernest Douglass and John Ellem are not state actors subject to suit under § 1983 and respectfully **RECOMMENDS** that the United States District Judge **GRANT** defendants' Motions for Summary Judgment, (ECF Nos. 50, 54), and that these defendants be **DISMISSED** from this action.

## V.    In Forma Pauperis Screening

Pursuant to 28 U.S.C. § 1915(e), an action proceeding in forma pauperis must be dismissed if the Court determines that it "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). A case is "frivolous" if it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), and lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain enough facts to state a claim that is plausible on its face. *Bell Atlantic Corp.*, 550 U.S. at 570.

The only remaining defendants named in Grondin's complaint are former appointed attorneys Joseph Santer, Courtney Ahlborn, Patrick Radcliff, and Paul Marteney, (ECF No. 2-1 at 1), all of whom he accuses of providing ineffective assistance of counsel. (ECF No. 2 at 5, 2-1 at 3-4). Grondin faults the defendants for (1) failing to adequately communicate with him, (2) intentionally delaying Grondin's habeas proceedings, and (3) otherwise colluding with the prosecutor's office and the state courts to thwart Grondin's habeas petition. (ECF No. 2-1 at 2-4). As discussed above, *see* Part. III.F, in their roles as court-appointed counsel representing Grondin, the

defendants did not act under color of state law, and consequently are not amenable to suit under § 1983.

Therefore, the undersigned **FINDS** that Joseph Santer, Courtney Ahlborn, Patrick Radcliff, and Paul Marteney are not state actors subject to suit under § 1983 and respectfully **RECOMMENDS** that the United States District Judge **DISMISS** the complaint against them.

## VI.    Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**:

1. That the defendants' Motions to Dismiss (ECF Nos. 27, 30, 31, 35, 39, 43, 58) be **GRANTED**;

2. That the defendants' Motions for Summary Judgment (ECF Nos. 50, 54) be **GRANTED**; and

3. That the Plaintiff's Complaint (ECF No. 2) be **DISMISSED**, with prejudice, as to all of Grondin's claims and corresponding defendants.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Goodwin and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, the Defendants, and any counsel of record.

**FILED:**  January 6, 2014

Cheryl A. Eifert
United States Magistrate Judge